UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA JEAN BULLOCH,

        Plaintiff,

v.                                       Case No. 1:14-cv-12
                                          Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
                                 /

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

        Plaintiff was born on May 19, 1958 (AR 137).[1] She alleged a disability onset date of May 15, 2010 (AR 137). Plaintiff earned a GED and had past work as a daycare provider (AR 19, 142). Plaintiff identified her disabling condition as fibromyalgia, cytomegalovirus, high copper in body and anemia (AR 141). An Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 5, 2012 (AR 10-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

        This court's review of the Commissioner's decision is typically focused on

---

[1] Citations to the administrative record will be referenced as (AR "page #").

determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

2

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II.  ALJ'S DECISION**

Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 15, 2010, and met the insured status requirements of the Act through December 31, 2013 (AR 12). Second, the ALJ found that plaintiff had a severe impairment of anxiety (AR 12). At the third step,

3

the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14). Specifically, plaintiff did not meet the requirements of Listing 12.06 (anxiety related disorders) (AR 14-15).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels, but is non-exertionally limited to simple, routine, and repetitive tasks" (AR 15). The ALJ also found that plaintiff was unable to perform any of her past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional level in the national economy (AR 20). Specifically, plaintiff could perform the following unskilled work in the regional economy, defined as the Lower Peninsula of Michigan: dishwasher (8,540 jobs); housekeeper (8,715 jobs); and assembler (32,380 jobs) (AR 20). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from May 15, 2010 (the alleged onset date) through October 5, 2012 (the date of the opinion) (AR 20).

### III. ANALYSIS

Plaintiff raised issues on appeal.

**A.     The ALJ did not include a severe impairment of fibromyalgia at step two of the sequential evaluation.**

Plaintiff contends that the ALJ erred by failing to find a severe impairment of fibromyalgia. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R.

4

§ 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, the ALJ found that plaintiff had a severe impairment of anxiety (AR 12). The ALJ's failure to include a severe impairment of fibromyalgia at step two is legally irrelevant. Accordingly, plaintiff's claim of error is denied.

### B. The ALJ failed to properly evaluate the medical evidence

### C. The ALJ failed to properly evaluate plaintiff's credibility

Plaintiff contends that the ALJ failed to acknowledge her diagnosis of fibromyalgia and failed to properly evaluate her credibility with respect to that diagnosis.

#### 1. ALJ's decision

Here, the ALJ performed an extensive evaluation of plaintiff's medical record and her allegations as follows:

> Claimant testified she does little around her home due to pain in her neck, the back of her skull, shoulders and arms. She stated she is exhausted, is in pain a lot and does not sleep well. Claimant reported these symptoms first appeared in 2006, but worsened prior to her alleged onset date. Additionally, Claimant testified to having vertigo for 20 years, since her divorce from her first husband. She related

having experienced an episode of vertigo the morning of her hearing, which lasted about 30 seconds. Claimant estimated she experiences such episodes two or three times a day. She testified to having difficulties standing, sitting, walking, climbing stairs, bending and lifting more than five pounds.

* * *

Although she was referred for a neurologist's consultation, she declined to keep the appointment, citing financial concerns (Ex 3F/9). However, in addition to Claimant's husband's disability income, she also enjoys the receipt of $3,275 per month in rental income from six properties. She testified her house was paid off at one point, and she has health insurance for herself. When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that claimant will seek examination and treatment. Claimant certainly treats regularly with Dr. Baker, treated monthly for six months with a rheumatologist, underwent an x-ray of her cervical spine, an MRI of her brain, and EMG and NCV testing, all of which was normal. Claimant's failure to seek examination and treatment for her alleged vertigo reflects poorly on her credibility and her assertions that the condition is disabling.

Claimant submitted to a physical examination with Bharti Sachdev, M.D., an internal medicine physician and state agency consultant, in July 2011. Dr. Sachdev observed no anemia, no central cyanosis, no abdominal tenderness, no lower extremity edema or clubbing, and no cervical tenderness, deformity or diminished range of motion. Claimant displayed normal range of motion in all of her joints, normal motor system, bulk, tone, and strength of her upper and lower extremities, and good grip strength. Dr. Sachdev observed no evidence of sensory deficit or incoordination, and no evidence of inflammatory arthritis in any joint. He observed Claimant was able to squat, get on and off the table, and ambulate with a stable gait (Ex l0F).

In April 2011, Claimant consulted with Kenneth Baker, M.D., regarding her complaints of pain and fatigue. Dr. Baker indicated Claimant's symptoms were consistent with both chronic fatigue syndrome and fibromyalgia, and he referred Claimant to a rheumatologist to confirm or rule out the diagnosis of fibromyalgia (Ex 12F). Notably, the rheumatologist's physical examination in May 2011 revealed Claimant looked well and comfortable. Her gait was observed to be normal. Her grip strength was normal in both hands, and her muscle power was normal in proximal and distal muscle groups of all four extremities (Ex 7F/3).

Claimant alleged pain and fatigue that makes it difficult for her to move around (Ex 3E). She also reported having vertigo that "never goes away" (id.). However, an MRI of Claimant's brain was unremarkable (Ex 5F/1), and x-rays of

6

Claimant's cervical spine were normal (Ex 7F/5). Moreover, she reported to her physical therapist her vertigo symptoms typically increase when she "works out hard and sweats" (Ex 6F/1). Further, in March 2012, Claimant reported having no complaints (Ex 12F/1), and her physical examination was unremarkable (Ex 12F/2-3). Claimant's physical examinations was also benign in April 2012 (Ex 13F/2), and May 2012 (Ex 13F/8). Thus, the objective medical record fails to support Claimant's allegations concerning the nature, intensity or frequency of her alleged symptoms of pain.

* * *

As for the opinion evidence, Dr. Baker noted Claimant was "disabled from work" (Ex 12F/8). However, it is well established in this Circuit that the opinion of a treating physician is entitled to substantial weight only if it is supported by sufficient medical data (*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)). This Circuit has held that an Administrative Law Judge is not bound by a treating physician's opinion where there is substantial medical evidence to the contrary (*Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284 (6th Cir. 1994)). Such opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the record (*Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1994)). Furthermore, the issue of if a claimant is disabled is within the special purview of me. Treating source opinions on issues that are reserved to the Commissioner of Social Security are never entitled to controlling weight or special significance (SSR 96-5p).

In this case, Dr. Baker's opinion is inconsistent with his own treatment records and other substantial evidence of record. For example, Dr. Baker refened Claimant to a rheumatologist to confirm or rule out the presence of fibromyalgia in Claimant. After monthly visits over a six month period, as well as physical examinations and laboratory studies, the rheumatologist did not diagnose Claimant with either fibromyalgia or chronic fatigue syndrome (Ex 10F). Dr. Baker's own treatment records reflect his observations of Claimant being in no acute distress (e.g., Ex 17F/2, 16; Ex 13F/7). Claimant told Dr. Sachdev her mind tells her she is in pain (Ex 10F), and Dr. Baker conceded he does not think she will do well on medications because of a possible "placebo effect" (Ex 17F/2). Moreover, his own physical examinations are largely benign (Ex 12F, 13F, 17F). Because Dr. Baker is not a specialist, does not cite to any objective findings or test results, and contradicts his own summary conclusion with his treatment records reflecting normal physical examinations, his opinion is given some, but not great weight.

(AR 16-18).

After reviewing this evidence, the ALJ concluded that:

> Claimant's chronic pain allegations are not credible in light of the medical evidence. She testified to being diagnosed with fibromyalgia, vertigo and arthritis in her knees and low back, all years prior to her alleged disability date. While she has complained that her pain level appears to be increasing with constant pain, the objective findings have not changed. Her conditions do not show deterioration or any additional medical difficulties. To the contrary, her conditions appear mild and stable, and no physician has recommended she proceed with more than conservative treatment.

(AR 19).

### 2. The ALJ's evaluation of opinions expressed by Dr. Baker and Dr. Solanki

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

8

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff contends that the record fails to support the ALJ's decision "discounting the quantitative existence of [her] fibromyalgia" as well as "its qualitative effects upon [her] functional capacity" Plaintiff's Brief (docket no. 10 at p. ID# 384) (emphasis omitted). The Court disagrees. In a May 5, 2011 report to plaintiff's primary physician, plaintiff's rheumatologist, Dr. Solanki diagnosed plaintiff with polyarticular arthritis, degenerative joint disease of the lumbosacral and cervical spine, and bilateral knee pain and crepitus (AR 224-25). This report did not include a diagnosis of fibromyalgia (AR 224-25). Without any explanation or reference to the earlier examination, Dr. Solanki's treatment notes from June 2011 appear to have added a diagnosis of fibromylagia syndrome (AR 222-23). Despite this notation, when plaintiff underwent a consultative examination with Dr. Sachdev in July 2011, she made no mention of a fibromyalgia diagnosis (AR 235-37). In the "record review/assessment" portion of the opinion, Dr. Sachdev recommended that Dr. Solanki's workup, including x-rays, be reviewed and "if negative the possibility of fibromyalgia needs to be considered" (AR 237). Based on this record, it is unclear as to whether Dr. Solanki's

9

treatment notes added a diagnosis a fibromylagia syndrome in June 2011. In this regard, Dr. Solanki provided no basis for that diagnosis which was absent in the comprehensive examination performed in May 2011. Nevertheless, by December 2011, plaintiff's primary physician was treating plaintiff for fibromyalgia (AR 247).

Social Security Ruling (SSR) 12-2p sets forth the medical evidence which is necessary to establish a diagnosis of fibromyalgia for purposes of disability. *See* SSR 12-2p ("Titles II and XVI: Evaluation of Fibromyalgia") (Eff. July 25, 2012).[2] In this case, the ALJ's decision did not explicitly address the diagnostic criteria for fibromyalgia under SSR 12-2p. However, it is not necessary to remand for a clarification of the ALJ's finding on this issue, because "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988).[3] Accordingly, plaintiff's claim that the ALJ failed to find that the treating physicians had diagnosed her with fibromyalgia is not an error requiring reversal.

Next, plaintiff contends that the ALJ improperly discounted Dr. Baker's statement from April 6, 2011 that she was "disabled from work due to fatigue" (AR 250). As the ALJ noted in the decision, whether a claimant is disabled "is within the special purview of [the ALJ]" (AR 18).

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson*, 378 F.3d at 549 (citations omitted).

[3] "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Although Dr. Baker was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled"). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, plaintiff's claim of error will be denied.

### 3. The ALJ's evaluation of plaintiff's credibility

Finally, plaintiff contends that the ALJ failed to properly evaluate her credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007).

Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ's credibility determination is particularly relevant in fibromyalgia claims, because the condition presents subjective symptoms and an absence of sufficient objective medical evidence to support this type of disability claim. *See Blair v. Commissioner of Social Security*, 430 Fed. Appx. 426, 430 (6th Cir. 2011). *See*, *e.g., Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[t]here are no laboratory tests for the presence or severity of fibromyalgia"). Here, the record does not indicate that plaintiff suffered disabling symptoms from her alleged physical conditions. As the ALJ noted, plaintiff's physical examinations in April, May and August 2012 (AR 255, 260-61, 311-12) were benign and plaintiff was not in acute distress (AR16-18). Indeed, even in December 2011, Dr. Baker noted that while plaintiff was complaining of eye pain and headaches, she was "[i]n no acute distress" (AR 247). In addition, the ALJ found that plaintiff could perform a number of daily activities (dressing, bathing, caring for her hair, shaving, feeding herself, using the toilet, preparing meals, doing laundry, shopping for groceries, caring for a dog, visiting family, and using FaceBook) (AR 14-15, 19). *See Blair*, 430 Fed. Appx. at 430 (ALJ properly considered the claimant's daily activities in evaluating subjective claims of fibromyalgia); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Based on this record, the Court finds no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Accordingly, Plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the

Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion shall be issued forthwith.


Date: March 18, 2015                               /s/ Hugh W. Brenneman, Jr.
                                                                         Hugh W. Brenneman, Jr.
                                                                         United States Magistrate Judge